IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESLIE A. HANDLER                         *
                                          *
        v.                                *    Civil No. JFM-01-161
                                          *
METROPOLITAN LIFE INSURANCE                *
COMPANY                                   *
                                     *****

FILED
U.S. DISTRICT COURT

2002 APR -3  A 10: 47

AT BALTIMORE
CLERK'S OFFICE
BY_____DEPUTY

### MEMORANDUM

Plaintiff Leslie A. Handler has brought this action against Metropolitan Life Insurance

Company ("MetLife") to collect "accidental means" death benefits under the Federal Employees'

Group Life Insurance Policy covering the life of her husband, Gordon R. Handler (the "insured").

MetLife has made a counter-claim seeking a declaratory judgment that it properly denied these

benefits because the insured's death was caused by medical or surgical treatment of an illness,

which the terms of the policy exclude from coverage. It has moved for summary judgment. For

the reasons stated below, MetLife's motion will be granted.[1]

I.

The insured was admitted to Northwest Hospital Center on December 26, 1997 with a 10-

day history of abdominal pain, chills and fever. He was diagnosed with an intra-abdominal

abscess and opted for exploratory surgery. The surgery was performed on December 27, 1997

and it revealed appendicitis, sigmoid diverticulitis, inflammation and infection. The surgeon

performed an appendectomy, drainage of multiple abscesses, sigmoid resection, and a colostomy.

---

[1] In its motion, MetLife has asked to be awarded the costs of defending this suit. Neither
party addressed this issue in its brief so I will deny the request.

At the end of the surgery, a central venous pressure catheter was inserted in the insured's left subclavian vein for the purpose of administering nutrition.

On December 30, 1997, the insured began to experience shortness of breath and excess fluid in his right lung, a condition referred to as a pleural effusion. On January 1, 1998, he went into cardiac arrest and became neurologically unresponsive. On January 5, 1998, he was transferred to St. Agnes hospital where he died on January 7, 1998. The insured's Certificate of Death stated that the immediate cause of death was "pleural effusion with complications due to (or as a consequence of) perforated mediastinum during total parenteral nutrition catheter placement." Def.'s Attachment 2, Ex. A. The Post Mortem Examination Report concluded that "the right braciocephalic vein (a major blood vessel) was perforated, along with a portion of the right lung with the catheter. This allowed the nutritional fluid to collect in the right chest." Def.'s Attachment 2, Ex. B at 6.

In January 1998, Plaintiff submitted a claim for the proceeds of the insured's life insurance policy. MetLife paid Plaintiff the basic life insurance benefits and interest under the policy in the amount of $85,041.91 but refused to pay the "accidental means" death benefits to Plaintiff on the ground that the insured's death was excluded from coverage. The "accidental means" portion of the policy states that "in no case shall any payment be made for death . . . (1) caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof . . . ." Def.'s Attachment 1.

II.

Metlife argues that there is no factual dispute that the insured died as a result of surgical treatment of his illness and that it properly denied "accidental means" benefits to Plaintiff under

2

the terms of the policy.  Plaintiff argues that the insurance policy's use of the term "treatment" is

ambiguous because it is subject to multiple interpretations and that under her interpretation the

circumstances of the insured's death do not fit within the policy's exclusion.  In support of her

position, Plaintiff has submitted an affidavit from Dr. Lawrence Repsher.  First, Repsher states

that the placement of a catheter for nutritional purposes at the conclusion of the insured's surgery

"was not an element of Mr. Handler's surgical treatment (as the object of his surgery was

completed) . . . ."  Repsher Aff. at ¶ 4.  Second, Repsher points out that once the "catheter was

accidentally misplaced, it served no treatment function whatsoever" because it was not providing

nutrition to the patient.  Id. at ¶ 5.

Under Maryland law for interpreting insurance contracts, Plaintiff's narrow and

circumscribed interpretation of what constitutes treatment under the exclusion clause must be

rejected.  Bushey v. Northern Assur. Co. of America, 766 A.2d 598, 600-01 (Md. 2001)

(requiring consideration of the clause as a whole, giving the words of the clause their ordinary

and customary meanings and considering the interpretation that a reasonably prudent layperson

would give the clause).  Plaintiff errs by considering only the direct results of surgical treatment

when the exclusion covers the direct and indirect results of both medical and surgical treatments.

The catheter was placed in the insured during surgery that was performed to treat his disease or

medical infirmity.  Plaintiff has offered no explanation, independent of this treatment, for the

catheter being placed in the insured.  Although it is not stated explicitly in the record,

presumably the insured was not able to get sufficient nutrition without the catheter either because

of his medical problems or because of the surgery itself.  In either case, the catheter would

qualify as, at the least, indirect treatment of the insured's illness under the plain language of the

3

policy exclusion. See Litman v. Monumental Life Ins. Co., 682 N.E.2d 135, 138-39 (Ill. App. Ct. 1997) (holding that the use of Hickman line that was inserted to provide nutrition to patient during operation to correct intestinal obstruction was "an on-going process that constituted an important part of her medical treatment" and was "essential to [the patient's] well-being and recovery"); see also Whetsell v. Mut. Life Ins. Co. of New York, 669 F.2d 955, 957 (4th Cir. 1982) (treating post-operative administration of saline solution through IV as part of medical treatment); Reid v. Aetna Life Ins. Co., 440 F. Supp. 1182, 1183 (S.D. Ill. 1977) (holding that administration of drug to prevent post-surgical infection was part of medical treatment).

Contrary to Plaintiff's position, the catheter is still considered treatment even after it was not serving its intended purpose and was instead injuring the insured. The Fourth Circuit has noted that "every court that has considered similar exclusionary clauses has held such provisions to exclude from coverage death caused by various mishaps occurring during the course of medical treatment." Whetsell, 669 F.2d at 956. In Whetsell, the Fourth Circuit held that a nearly identical exclusion provision applied when an insured was administered a post-operative saline solution with an IV needle that infected him with bacterial endocarditis and caused his death. It stated that "[s]ince all deaths caused by medical treatment necessarily involve mistreatment, to say that mistreatment is not covered by the exclusion is to say that the provision excludes nothing." Id. at 957; see also Senkier v. Hartford Life & Accident Ins., 948 F.2d 1050, 1053 (7th Cir. 1991) ("When you die from the standard complications of standard medical treatments . . . your death is the result of illness."). This reasoning applies to the present case as well.

In addition to Repsher's affidavit, Plaintiff cites three cases that she claims support her position. However, none of these cases persuade, let alone require, me to allow this case to go to

4

a jury against the weight of judicial authority.  See Whetsell, 669 F.2d at 956; see also Jay M.

Zitter, Annotation, What Constitutes Medical or Surgical Treatment, or the Like, Within

Exclusionary Clause of Accident Policy or Accidental-Death Feature of Life Policy, 56

A.L.R.5th 471 (1998).  In the only modern case cited by the Plaintiff,[2] Mayfield v. Metropolitan

Life Ins. Co., 585 S.W.2d 163, 168-69 (Mo. Ct. App. 1979), the Missouri Court of Appeals held

that there was no evidence to support a jury finding that the insured's death was caused directly

by treatment when a displaced feeding tube caused the insured's death.  Id.  Among other

reasons, this case is not controlling because the court specifically limited its opinion to

examining a challenged jury instruction and did not consider whether a displaced feeding tube

could support a finding that the insured's death was the indirect result of surgical treatment.  Id.

at 169.



Date: _April 3, 2002_

_J. Frederick Motz_
United States District Judge

---

[2] The other two cases cited by Plaintiff, Mutual Life Ins. Co. of New York v. Dodge, 11
F.2d 486 (4th Cir. 1926) and Beile v. Travelers Protective Ass'n of America, 135 S.W 497 (Mo.
Ct. App. 1911), were decided so long ago that their conceptions of medicine, disease and
treatment have little relevance today.  Notably, the Fourth Circuit did not even consider Dodge
when it decided Whetsell despite the similarity of the issues involved.